UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**APPROXIMATELY 40,353 USDT.ETH CRYPTOCURRENCY,**<br><br>Defendant. | Case No. 25-cv-2116 (CRC) |

**OPINION**

A person based in Nigeria impersonated the Trump-Vance Inaugural Committee ("Committee"), tricked a donor into handing over cryptocurrency, and then laundered the funds through digital wallets. The government now moves for default judgment in this *in rem* civil forfeiture action, seeking a final order of forfeiture against all persons claiming an interest in about 40,353 USDT.ETH ("Defendant Property") seized from a Binance.com account and an unhosted wallet. The government has satisfied the standard for default judgment and the requirements enumerated in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Accordingly, the Court will grant its motion for default judgment and issue a final order of forfeiture.

## I. Background[1]

On Christmas Eve 2024, an unnamed victim (referred to as "Victim-1" in the complaint) received an email asking for a donation to the Committee. Compl. ¶¶ 23–26. The email was

[1] This background section is based on the well-pleaded allegations in the verified complaint, which the Court accepts as true for the purposes of assessing this motion for default judgment. See Boland v. Cacper Constr. Corp, 130 F. Supp. 3d 379, 383 (D.D.C. 2015).

sent by someone purporting to be Steve Witkoff, a prominent American businessman and Committee co-chair. See id. ¶ 24. In fact, the email came from "steve_witkoff@t47lnaugural.com," which resembles the Committee's authentic domain name "t47inaugural.com" but replaces the "I" with an "L." Id. As the complaint explains, a lowercase "*l*" can look like an uppercase "I." Id.

Victim-1 believed the solicitation to be authentic. Id. ¶ 23. The day after Christmas, Victim-1 routed 250,300 USDT.ETH, a cryptocurrency, to an online wallet ending in "58c52" (hereinafter, "Address 58c52"). Id. ¶ 26. Victim-1 confirmed the donation in an email to the fake Steve Witkoff. Id. ¶¶ 26–27. Within a day, 215,000 USDT.ETH had been transferred out of Address 58c52. Id. ¶ 28. Among the transferred funds was a total of 20,024 USDT.ETH sent to a wallet with an address ending in be386 ("Address be386"). Id. ¶ 30.

On December 30, 2024, the FBI requested that Tether, a cryptocurrency wallet-management company, freeze the 20,336 USDT.ETH left in Address 58c52. Id. ¶ 29. Law enforcement also secured from Binance.com, a worldwide cryptocurrency exchange, the records associated with Address be386. Id. ¶ 31. As it turned out, that wallet was linked to an individual named Ehiremen Aigbokhan based in Lagos, Nigeria. Id. The FBI requested that Binance.com freeze the funds in Address be386 as well. Id. Further investigation connected Aigbokhan with the "t47lnaugural.com" domain and email address that had sent the deceptive solicitation email. Id. ¶¶ 32–36. Law enforcement concluded that Aigbokhan likely "received an international transfer of funds from the U.S. to Nigeria as a result of his fraudulent activity." Id. ¶ 36.

On January 6, 2025, a magistrate judge in this court found probable cause for the seizure of Defendant Property. See id. ¶ 37. In July 2025, the government filed a verified complaint for forfeiture of the frozen funds, explaining that Defendant Property should be turned over to the

United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C). See id. ¶¶ 39–44. According to the government, Defendant Property had been involved in wire fraud, conspiracy to commit wire fraud, money laundering, and conspiracy to commit money laundering, all in violation of federal law. See id. Pursuant to Supplemental Rule G(4)(a), the government posted a notice of forfeiture on its official website in July and August 2025. See Decl. of Pub'n, Dkt. 6-1 at 2, 5. No party filed any claim based on the notice of publication. Mot. for Default J., Dkt. 8 ¶ 4. The government represents that it has found no person who reasonably appears to be a potential claimant in this case. See id. at ¶ 2. The Clerk of Court entered default as to all potentially interested parties in February 2026. See Clerk's Entry of Def., Dkt. 9. In April, the government moved for default judgment. See Mot. for Default J., Dkt. 10. That motion is now ripe for adjudication.

## II. Legal Standards

Default judgment is available when "the adversary process has been halted because of an essentially unresponsive party." Johnson v. Georgetown Univ., No. 25-cv-1540 (CRC), 2026 WL 2568733, at *3 (D.D.C. Aug. 31, 2026) (citation omitted). Obtaining default judgment is a two-step process. See United States v. Approximately 927,155.442 USDT, No. 25-cv-3914 (CRC), 2026 WL 2454470, at *2 (D.D.C. Aug. 21, 2026). First, a plaintiff must request that the Clerk of the Court enter default against a party who has "failed to plead or otherwise defend" against the action. Fed. R. Civ. P. 55(a). Then, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P 55(b)(2).

"Whether default judgment is appropriate is in the discretion of the trial court." SEIU v. Vistacare LLC, 819 F. Supp. 3d 1, 10 (D.D.C. 2026) (citations omitted). "Upon entry of default by the clerk," the "defaulting defendant is deemed to admit every well-pleaded allegation in the

complaint." Id. (cleaned up). The court then evaluates whether the complaint states a valid claim for relief. See United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd., 324 F. Supp. 3d 38, 45 (D.D.C. 2018).

To obtain a default judgment entered pursuant to a complaint for forfeiture *in rem*, the government must show that it complied with requirements in Supplemental Rule G. See Fed. R. Civ. P. Supp. R. G; United States v. $215,587.22 in U.S. Currency, 282 F. Supp. 3d 109, 111 (D.D.C. 2017). Supplemental Rule G(4) requires notice to the public via publication and notice to potential claimants directly. See Approximately 927,155.442 USDT, 2026 WL 2454470, at *2. Supplemental Rule G(2) sets out pleading standards. The complaint must be verified, state the grounds for jurisdiction and venue, describe the property with reasonable particularity, identify the statute under which the forfeiture action is brought, and state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. See Fed. R. Civ. P. Supp. R. G(2); Approximately 927,155.442 USDT, 2026 WL 2454470, at *2. This is not an "onerous standard," but rather sets a "low bar" appropriate at the default judgment phase "where a court should exercise greater flexibility in judging factual allegations." Id. at *3 (citation omitted).

## III. Analysis

The government has satisfied the procedural and substantive requirements for a default judgment. As to notice, the government "published notice of the action within a reasonable time after filing the complaint," Fed. R. Civ. P. Supp. R. G(4)(a)(i), "on an official internet government forfeiture site for at least 30 consecutive days," id. G(4)(a)(iii)(B), (iv)(C). That notice properly "describe[d] the property, state[d] the time to file a claim and answer, and name[d] the government attorney to be served with the claim and answer." United States v.

Twenty-Four Cryptocurrency Accts., 473 F. Supp. 3d 1, 5 (D.D.C. 2020) (citing Fed. R. Civ. P. Supp. R. G(4)(a)(ii)). The government says that there are no known potential claimants for Defendant Property here. See Mot. for Default J. ¶ 2, 5. The Court thus find that Supplemental Rule G's notice requirements are satisfied.

As to the pleading requirements, the government easily clears the "low bar" required for forfeiture *in rem*. Approximately 927,155.442 USDT, 2026 WL 2454470, at *3. The verified complaint states the appropriate bases for jurisdiction and venue, Compl. ¶¶ 3–5, and describes Defendant Property in reasonable detail, including by specific reference to its account numbers, id. ¶¶ 12–13. The complaint further identifies the statutes under which the action is brought, see id. ¶¶ 6–11, including 18 U.S.C. § 981(a)(1), which mandates forfeiture of property involved in wire fraud and money laundering, id. ¶¶ 10–11.

Finally, the complaint states "sufficiently detailed facts to support a belief that the government could meet its burden of proof (here, a preponderance of the evidence) if this case were to go to trial." Approximately 927,155.442 USDT, 2026 WL 2454470, at *3 (citing United States v. Sum of $ 70,990,605, 4 Supp. 3d 189, 197 (D.D.C. 2014)). The complaint alleges that the funds at issue were procured via a fraudulent "business email compromise scheme," or a ploy in which an email "appears to come from a known source making a legitimate request" but instead comes from an imposter intending "to trick or coerce victims into providing them money." Compl. ¶ 22. According to the complaint, the trickery here turned on a single letter in an email address: a lowercase "*l*" used to mimic an uppercase "I," making "t47**l**naugural.com" (the false source) appear to be "t47**I**naugural.com" (the true source). Id. ¶ 24 (emphasis added). The complaint alleges that Victim-1 intended to donate to Steve Witkoff and the Committee. See id. ¶¶ 23, 26–27. But, according to facts amply alleged in the complaint, the deceptive

scheme led the money to be wired to an account controlled by an individual in Nigeria. See Compl. ¶¶ 32–36. The funds were then laundered through cryptocurrency wallets within a matter of hours. Id. ¶ 28.

In sum, the allegations abundantly support a reasonable belief that the government would be able to prove by a preponderance of the evidence that Defendant Property is traceable to wire fraud and money laundering, rendering it forfeitable under 18 U.S.C. § 981(a)(1).

## IV. Conclusion

Because the verified complaint states a claim for forfeiture *in rem* under Supplemental Rule G, the government has complied with the requisite procedural requirements including adequate notice, and no claimant has appeared to challenge the forfeiture, the Court will grant the government's motion for default judgment. A separate Order shall accompany this Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: October 28, 2026